IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Darian Antonio Coleman,       ) | C/A No. 8:14-cv-00748-DCN-JDA |
|       ) | |
| Plaintiff,       ) | **REPORT AND RECOMMENDATION** |
|       ) | **OF MAGISTRATE JUDGE** |
| v.       ) | |
| Asst. Warden Randall Williams,       ) | |
| Warden John Pate,       ) | |
|       ) | |
| Defendants.       ) | |
| _____) | |

This matter is before the Court on Defendants' motion for summary judgment [Doc. 142] and the following motions filed by Plaintiff: a motion to amend/correct the complaint to dismiss Defendants in their official capacities and to dismiss Defendant John Pate in his entirety [Doc. 170], a motion to take judicial notice [Doc. 181], a motion to dismiss Defendant Randall Williams in his official capacity [Doc.184], and a motion for summary judgment [Doc. 191].  Plaintiff, proceeding pro se, brought this action under 42 U.S.C. § 1983.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial proceedings in prisoner petitions for relief under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff filed this action on February 28, 2014,[1] against Defendants Randall Williams ("Williams") and John Pate ("Pate;" collectively "Defendants"), alleging violations of his due

---

[1] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270(1988).  In this case, construing the filing date in the light most favorable to Plaintiff, his Complaint was filed on February 28, 2014 [Doc. 1-2 at 1 (envelope stamped as received by the prison mailroom on Feb. 28, 2014)], and his Amended Complaint was filed on April 28, 2014 [Doc. 44-7 at 1 (envelope stamped as received by the prison mailroom on Apr. 28, 2014)].

process rights. [Doc. 1 at 2.] Plaintiff filed an Amended Complaint on April 28, 2014. [Doc. 44.] On November 3, 2014, Defendants filed a motion for summary judgment. [Doc. 142.] On November 4, 2014, the Court issued an Order in accordance with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary judgment/dismissal procedure and of the possible consequences if he failed to adequately respond to the motion. [Doc. 143.] On February 11, 2015, Plaintiff filed a response in opposition to Defendants' motion. [Doc. 176.]

Plaintiff has filed several additional motions. On January 30, 2015, Plaintiff filed a motion to amend/correct his Complaint to have both Defendants dismissed in their official capacities and to dismiss Pate in his entirety. [Doc. 170.] Defendants filed a response in opposition[2] on February 17, 2015. [Doc. 178.] Plaintiff filed a motion to take judicial notice on February 18, 2015 [Doc. 181] and filed additional attachments on March 2, 2015 [Doc. 183]. Defendants filed a response in opposition on March 9, 2015 [Doc. 185], and Plaintiff filed a reply on March 20, 2015 [Doc. 188]. Plaintiff filed a motion to dismiss Williams in his official capacity on March 5, 2015. [Doc. 184.] Defendants filed a response in opposition on March 23, 2015 [Doc. 189], and Plaintiff filed replies on April 13, 2015 and May 1, 2015 [Docs. 195, 200]. On March 24, 2015, Plaintiff filed a motion for summary judgment. [Doc. 191.] Defendants filed a response in opposition on April 10, 2015 [Doc. 193], and Plaintiff filed replies on April 17, 2015; April 23, 2015; April 30, 2015; and May 1, 2015 [Docs. 196, 198, 199, 200]. Accordingly, these motions are ripe for review.

---

[2]Defendants did not oppose the merits of Plaintiff's motion, but argued that it was untimely and asked the Court to proceed in the resolution of Defendants' pending motion for summary judgment. [Doc. 178.]

2

## BACKGROUND[3]

At all times relevant to this action, Plaintiff was in the custody of the South Carolina Department of Corrections ("SCDC") and housed at Kershaw Correctional Institution ("Kershaw") and Kirkland Correctional Institution ("Kirkland").[4]  [Doc. 1 at 3.]  Plaintiff alleges that on the morning of February 21, 2013, he was attending the Palmetto Educational Program at Kershaw.  [*Id.*]  Around 9:30 a.m., Lieutenant Robert Miller ("Lieutenant Miller") found Plaintiff and told him to turn in all of his belongings and step outside.  [*Id.*]  When Plaintiff stepped into the hallway, Lieutenant Miller told him that he had found a key in Plaintiff's room and Plaintiff was going to lockup.  [*Id.*]  Plaintiff told Lieutenant Miller that could not be true because he knew everything that was in his room.  [*Id.*]  Lieutenant Miller took Plaintiff back to his room where he was locked in with his roommates who then assaulted him.  [*Id.*]  Plaintiff was taken to the hospital, discharged on February 24, 2013, and transferred to the Kirkland infirmary until March 5, 2013.  [*Id.*]

---

[3]In his response in opposition to the motion for summary judgment, Plaintiff "sets forth that once the amended pleading was filed the original pleading became inactive" [Doc. 176 at 4]; however, out of an abundance of caution for the pro se Plaintiff, the facts included in this Background section are taken directly from Plaintiff's Complaint and Amended Complaint, with the exception of the sanctions Plaintiff received as a result of the hearing.  However, Plaintiff has filed a motion to dismiss Pate in his entirety [Doc. 170] which the undersigned recommends granting; accordingly, the action should continue as to Williams and this Report and Recommendation will not discuss the allegations against Pate.

[4]Plaintiff was housed at Allendale Correctional Institution at the time he filed this action. [Doc. 1 at 2.] However, he was transferred to Kershaw during the pendency of this action. [Doc. 94 (notice of change of address).]

Plaintiff was charged with a 904 infraction, possession of escape tools and/or paraphernalia, by Officer Bradley Mills ("Officer Mills") who had conducted the shakedown search on February 21, 2013. [*Id.* at 3.] Plaintiff was served with notice of a hearing on March 25, 2013. [*Id.* at 4.] On March 29, 2013, Plaintiff appeared before the disciplinary board where Williams was the presiding disciplinary hearing officer ("DHO").[5] [*Id.*] Plaintiff assisted by Counsel Substitute, Mrs. Jones.[6] [*Id.*] Williams advised Plaintiff that if he were found guilty, he could face administrative or disciplinary detention, loss of good time credits, loss of work credits, and failure to earn good time credits for the month of the infraction. [*Id.*] Williams told Officer Mills that he was expected to be truthful and when Williams asked Officer Mills if the incident report was true and correct, Officer Mills responded "yes." [*Id.*] Officer Mills named Lieutenant Miller and Officer Ujveri as witnesses to the shakedown search. [*Id.* at 5.] Plaintiff alleges he submitted non-frivolous evidence during the hearing that contradicted Officer Mills's incident report, verbal testimony, and evidence but that Williams disregarded, ignored, and suppressed the evidence. [*Id.* at 4.] Williams produced a photo that he showed to Jones, who stated that she didn't "even see why this inmate was charged with an infraction."[7] [*Id.*] Plaintiff was asked to step out of the hearing so that a decision could be rendered. [*Id.*] Once he reentered the room, Plaintiff was told the

---

[5] Williams is now an Associate Warden at Allendale. [Doc. 142-3 ¶ 2.]

[6] Plaintiff's Counsel Substitute is identified as V. Jones in the hearing transcript. [Doc. 176-2 at 83.]

[7] The hearing transcript reports that Jones stated, "So, I'm not clear on why the inmate was charged with the 904." [Doc. 176-2 at 86.]

hearing would be continued so that Williams could receive better viewable photos of the evidence. [*Id.* at 4–5; Doc. 1 at 4.]

The hearing was continued on April 11, 2013. [Doc. 44 at 5.] Williams stated the purpose of the hearing was to review the evidence photo. [*Id.*] Plaintiff informed Williams on the record that the incident report stated that the piece of plastic had been found in an unsecured box. [*Id.*] Plaintiff informed Williams that the box had not been entered into evidence and Williams disregarded, ignored, and suppressed Plaintiff's submission of material facts. [*Id.*] Plaintiff then submitted non-frivolous exculpatory evidence that although the incident report stated one piece of plastic had been found, measuring two inches by one inch and approximately 1/4 inch thick with notches carved into it, the photo showed two pieces of plastic that did not match the description in the incident report.[8] [*Id.*] Plaintiff asserts that Williams disregarded, ignored, and suppressed this argument and tried to coerce Plaintiff into seeing that the photo showed only one piece of plastic and any discrepancy was due to the fact that it was a photocopy. [*Id.*] Plaintiff further asserts that Williams said he was "not worried about the other piece of plastic. [Williams was] worried about the plastic with the notches on it." [*Id.*] At the conclusion of the hearing, Plaintiff was found guilty and was sanctioned to 360 day of disciplinary detention[9]; the loss of the ability to buy a television for five years; the suspension of canteen, telephone, and visitation privileges for 360 days; and a reprimand. [Doc. 176-2 at 96.]

---

[8]A photocopy of the evidence can be found at Docket Entry Number 44-5.

[9]Through the use of the prison grievance system, Plaintiff later received credit for 46 days Pre-Hearing Detention time he served prior to his conviction. [Doc. 1-1 at 2–3.]

Plaintiff appealed his conviction through the grievance process and it was overturned as a result of his Step 2 grievance. [Doc. 44 at 6.] Plaintiff alleges that, as a result of being confined in administrative segregation, he was hindered from appearing before the parole board as scheduled, the length of his sentence was changed, and he suffered mental and emotional distress. [Doc. 1 at 6.]

Plaintiff seeks compensatory damages of $5,000 and punitive damages of $5,000 from Williams. [Doc. 44 at 9.] Further, Plaintiff seeks to have Williams terminated, to have Plaintiff's record expunged of this offense, and to have judicial review of any § 1983 action where Williams was the presiding DHO. [*Id.*]

## **APPLICABLE LAW**

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. Even under this less stringent standard, however, the pro se complaint is still subject to summary dismissal. *Id.* at 520–21. The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law. Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [him] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic*

*Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'"  *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## **DISCUSSION**

Defendants argue Plaintiff has failed to establish the deprivation of any constitutionally protected rights; Defendants are entitled to Eleventh Amendment Immunity in their official capacities[10]; the doctrine of respondeat superior is not applicable to § 1983 claims; Defendants are entitled to qualified immunity; Plaintiff's claims are frivolous, malicious, and fail to state a claim; and Plaintiff has already received the benefit of his administrative remedies. [Doc. 142-1.] The Court agrees summary judgment should be granted.

---

[10] Plaintiff has also filed two motions to dismiss Defendants in their official capacities. [Docs. 170, 184.] The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted). Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983. *Id.* As a result, to the extent Plaintiff has alleged claims against Defendants in their official capacities, those claims must be dismissed because Defendants are entitled to immunity pursuant to the Eleventh Amendment. Accordingly, the Court recommends granting the motions to dismiss Williams in his official capacity.

**Due Process Claims**

Plaintiff argues he was denied due process in his disciplinary hearing because Williams disregarded, ignored, and suppressed non-frivolous evidence submitted by Plaintiff. [Doc. 44 at 4.] Plaintiff argues that the fact that his conviction was overturned as a result of his Step 2 grievance demonstrates that there was procedural error and provides support for his allegations. [*Id.* at 6.] Further, Plaintiff argues Williams failed to provide any written reasoning for his decision to find Plaintiff guilty or explain why he excluded some evidence and there was insufficient evidence to support Plaintiff's conviction. [*Id.* at 6–7.] Plaintiff also argues that his placement in disciplinary detention violated his due process rights. [Docs. 1 at 6; 44 at 6.] Defendants contend Plaintiff received adequate due process in his disciplinary hearing, and therefore, they are entitled to summary judgment on Plaintiff's due process claims. [Doc. 46-1 at 11-12.] The Court agrees.

### *Due Process with Respect to the Disciplinary Hearing*

In *Wolff v. McDonnell*, the Supreme Court set out the requirements for due process in prison disciplinary hearings:

1. Giving the prisoner written notice of the charges at least 24 hours before he appears for his disciplinary hearing;

2. Providing the prisoner a written statement by the fact finder(s) as to the evidence relied on and reasons for the disciplinary action;

3. Allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be an undue hazard to institutional safety or correctional goals;

4. Permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a competent inmate designated by staff, if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case; and

      5.      Providing impartial fact finders.

418 U.S. 539, 563–76 (1974). A review of the record reveals that the due process requirements stated in *Wolff* were observed in this case. To begin, Plaintiff does not allege a failure to receive twenty-four hours notice of his disciplinary hearing; an inability to call witnesses or to obtain assistance; or that he is illiterate or the issue determined at the disciplinary hearing was particularly complex. Plaintiff was provided notice on March 25, 2013 of the March 29, 2013 hearing. [Doc. 142-3 at 8.] Plaintiff was aware he was being charged with a 904 infraction, possession of escape tools and/or paraphernalia. [*Id.*] Further, Plaintiff was able to request that his accuser, Officer Mills, be present, and Plaintiff requested and received counsel substitute. [*Id.*; Doc. 176-2 at 83.]

      Plaintiff's argument that Williams failed to provide a written report explaining what evidence he relied on and why he excluded some evidence also fails. Williams completed a disciplinary report and hearing record, explaining that he relied on the officer's report and the attached evidence. [142-3 at 8.] Additionally, the fact that Williams did not rely on Plaintiff's contradictory evidence does not mean that he excluded it. As previously stated, Williams avers that he found the officer's testimony and incident report more credible than Plaintiff's evidence. [Doc. 142-3 ¶ 12.] Accordingly, Plaintiff received the due process protections he was entitled to, and summary judgment is appropriate with respect to this claim.

      Plaintiff contends that he was denied due process because Williams was not an impartial fact finder. Plaintiff alleges Williams ignored and suppressed relevant contradictory evidence—including Plaintiff's allegation that the photocopy showed two pieces of plastic while the incident report mentions only one piece of plastic—and

attempted to coerce Plaintiff into seeing that the photocopy showed only one piece of plastic. [Doc. 44 at 4–5.] However, the Court finds these unsupported allegations fail to demonstrate a genuine issue of material fact as to whether Plaintiff was provided an impartial fact finder. In his affidavit, Williams avers that he noted that Plaintiff's testimony contradicted Officer Mills's incident report and evidence; however, Williams found the opposing testimony more credible. [Doc. 142-3 ¶ 12.] Additionally, a review of the hearing transcript and the disciplinary report and hearing record demonstrates that Williams explained that he reached his decision based on Officer Mills's incident report and attached evidence. [Docs. 176-2 at 96; 142-3 at 8.] The hearing transcript also evidences that Williams, Plaintiff, and Jones had a discussion about the photocopy and whether it showed one piece of plastic or two. [Doc. 176-2 at 93–95.] Plaintiff's attempt to classify this disagreement as coercion is not sustainable, and Plaintiff has produced no evidence that Williams ignored or suppressed evidence in the disciplinary hearing.

To the extent Plaintiff attempts to state he has suffered a per se due process violation because his conviction was overturned, his claim fails.[11] Plaintiff's conviction reversal alone does not mean that a constitutional violation occurred. *See Harper v. Lee,* 938 F.2d 104, 105–06 (8th Cir. 1991) (finding that a plaintiff received sufficient due process

---

[11]As discussed above, Plaintiff was afforded the requisite due process under *Wolff*. To the extent Plaintiff is asserting a claim based on the Williams's alleged violation of, or failure to follow, SCDC's own policies and procedures—e.g., the unsecured box where the alleged key was found not being submitted into evidence—this assertion fails to set forth a claim under § 1983. The failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation. *See Keeler v. Pea,* 782 F.Supp. 42, 44 (D.S.C. 1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983); *see also Thompson v. Johnson*, No. 7:07-cv-00571, 2007 WL 4355256, at *3 (W.D. Va. Dec. 10, 2007) ("The [Federal Rules of Evidence] are not applicable to institutional disciplinary hearings.").

through his rehearing); *cf. Young v. Hoffman,* 970 F.2d 1154, 1156 (2d Cir. 1992) (holding plaintiff did not suffer a due process violation when he was ultimately afforded his due process protections through an administrative reversal of his conviction). A disciplinary decision is sufficient to pass scrutiny under the due process clause as long as it is supported by "some" evidence. *Superintendent, Mass. Corr. Inst., Walpole, v. Hill,* 472 U.S. 445, 456–457 (1985) (holding that in an institutional setting, the factfinder need only show that some evidence existed to support the decision); *see also Baker v. Lyles,* 904 F.2d 925, 931 (4th Cir. 1990) (applying the holding in *Superintendent, Mass. Corr. Inst., Walpole*, 472 U.S. 445). Here, the transcript provided to the Court shows that the accusing officer, Officer Mills, testified that the incident report he filed was true and correct and that he understood he was expected to give honest and truthful testimony during the hearing. [Doc. 176-2 at 84, 86.] The incident report filed by Officer Mills represents that on February 21, 2013, Officer Mills conducted a routine shakedown of cell 22 in Oak A. [Doc. 1-1 at 1.] Officer Mills discovered a piece of plastic measuring approximately two inches by one inch that was approximately a quarter inch thick and had notches on one of the long sides. [*Id.*] The piece of plastic was discovered in an unsecured box in the common area of the cell, and none of the inmates took ownership of it. [*Id.*]

Although Plaintiff's conviction was subsequently reversed, the record in this case reflects that there was "some" evidence to support Williams's decision. Therefore, Plaintiff has failed to establish a due process violation with respect to Plaintiff's disciplinary hearing and conviction.[12]

---

[12]In addition to these procedures, plaintiff received further process. He was permitted to appeal his conviction through the prison grievance system and was successful in getting

14

***Due Process with Respect to Plaintiff's Disciplinary Detention***

To the extent that Plaintiff alleges that his initial placement in segregation between the time he was charged with the 904 violation and the time his conviction was overturned violated his due process rights afforded under the Fourteenth Amendment, this argument fails.[13]  In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. *Beverati v. Smith,* 120 F.3d 500, 502 (4th Cir. 1997).  Although prisoners are afforded some due process rights while incarcerated, those liberty interests are limited to "the freedom from restraint which, while not exceeding the sentence in such and unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin v. Conner,* 515 U.S. 472, 484 (1995).  Within the Fourth Circuit, courts have

---

his conviction overturned.  [Doc. 1-1 at 2–5.]  Moreover, a number of federal courts have held that the effect of a successful administrative appeal is to "'cure[ ]' any procedural defect that may have occurred at the disciplinary hearing."  *Sowell v. Ryan,* 823 F.Supp. 107, 110 (W.D.N.Y.1992), *aff'd,* 996 F.2d 302 (2d Cir. 1993); *accord Young,* 970 F.2d at 1156; *Harper,* 938 F.2d at 105; *Hyson v. Neubert,* 820 F.Supp. 184, 191 (D.N.J. 1993) ("[W]here prison officials rectify the consequences of a constitutionally deficient disciplinary hearing within a reasonable time, even absent a specific regulatory appeal procedure, the mandates of due process have been satisfied.").  Here, Plaintiff's conviction was overturned through the normal prison appeal procedure.  Thus, even if Plaintiff's due process rights had been violated in the course of his disciplinary hearing, because the prison's procedure *as a whole* led to the vindication of his procedural rights, Plaintiff was afforded the process due to him.

[13]With respect to Plaintiff's allegations that his placement is disciplinary detention hindered him from appearing before the parole board or altered the length of his sentence, Plaintiff has provided no evidence in support of these claims.  *See Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989) (holding that conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion).

held that the following sanctions do *not* constitute "atypical and significant hardship": disciplinary detention, segregated confinement, the loss of the inmate's prison job, the denial of permission to participate in work release, and the loss of canteen, visitation, and phone privileges. *See Kitchen v. Upshaw*, 286 F.3d 179, 189 (4th Cir. 2002); *Williams v. Farrior*, 334 F.Supp.2d 898, 904 & n.9 (E.D. Va. 2004). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." *Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir. 1991); *see also Beverati,* 120 F.3d at 502 (holding that a six-month term in segregation did not impose an atypical hardship where the inmates alleged that their cells were infested with vermin and smeared with urine; that no outside recreation was permitted; that there were no religious services available; and that food was served in considerably smaller portions). Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. *Hewitt v. Helms,* 459 U.S. 460, 468 (1983); *Meachum v. Fano,* 427 U.S. 215, 224 (1976). Consequently, no constitutionally protected liberty interest is implicated in Plaintiff's placement in disciplinary detention, or in Plaintiff's loss of television, canteen, telephone, and visitation privileges. *See Beverati*, 120 F.3d at 502; *Reffitt v. Nixon*, 917 F. Supp. 409, 413 (E.D. Va. 1996). Therefore, with respect to Plaintiff's due process claims, the Court recommends Defendants' motion for summary judgment be granted.

**Qualified Immunity**

Defendants also argue they are entitled to qualified immunity. [Doc. 142-1 at 19–22.] The Court agrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* Further, qualified immunity is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819). For purposes of this analysis, a right is "clearly established" if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

17

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

As discussed above, Plaintiff's allegations fail to demonstrate Williams violated Plaintiff's constitutional rights. Therefore, Williams is entitled to qualified immunity.[14]

**Remaining Motions**

Because an order adopting this Report and Recommendation would terminate this action, the Court recommends finding as moot Plaintiff's motion to take judicial notice [Doc. 181] and motion for summary judgment [Doc. 191].

---

[14]Because the Court finds that Plaintiff has failed to establish a constitutional violation, the Court declines to address the parties' remaining arguments.

**RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED; Plaintiff's motion to amend/correct his Complaint be GRANTED; Plaintiff's motion to dismiss Randall Williams in his official capacity be GRANTED; Plaintiff's motion to take judicial notice be found as MOOT; and Plaintiff's motion for summary judgment be found as MOOT.

IT IS SO RECOMMENDED.

S/Jacquelyn D. Austin
United States Magistrate Judge

June 17, 2015
Greenville, South Carolina